UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

```
------------------------------------------------------  X
LIFETIME WELL LLC,                                      :
                                                        :
                    Plaintiff,                          :
                                                        :
           v.                                           :        CASE NO. 2:25-CV-05135-MAK
                                                        :
IBSPOT.COM INC.                                         :
                                                        :
                    Defendant.                          :
                                                        :
------------------------------------------------------  X
```

## DEFENDANT COUNSEL'S MEMORANDUM SHOWING CAUSE REGARDING ARTIFICIAL INTELLIGENCE USAGE

The undersigned counsel ("Anderson and Associates," or "A&A") of defendant IBSPOT.COM INC. ("Client" or "Defendant") hereby submits this memorandum of law pursuant to the Court Order, ECF No. 27, confirming the source of its several errors in cited authorities in its Motion to Dismiss, ECF No. 22, and showing cause why the Court should not impose monetary sanctions for the multiple errors apparently generated by artificial intelligence platforms Lexis+ AI and LexisNexis Protégé. Anderson and Associates comes before this Court with its tail between its legs, fully acknowledging the errors, and for the reasons stated *infra*, respectfully beseeches this Court not to impose monetary sanctions.

The undersigned has conferred with local Pennsylvania counsel Jeffrey Goldin, who is not in opposition to the relief requested by A&A through this memorandum. A&A is also not in opposition to Attorney Goldin's filing at ECF No. 29. Plaintiff's counsel has also been conferred and takes no position on the relief requested.

**Factual and Procedural Background**

IBSPOT.COM is an e-commerce platform with a mission to make it easy for U.S. shoppers to discover and enjoy products from around the globe.  The product at issue in this copyright infringement and trademark case is the Oricle Hearing Aid, a hearing aid developed by Lifetime Well LLC and later sold in very limited quantities via the IBSPOT.COM platform. Throughout the duration of the product's listing on IBSPOT.COM, three orders, placed on March 11, 2025, March 18, 2025 and May 11, 2025 were fulfilled by IBSPOT.COM to the tune of approximately $800 in profits for IBSPOT.COM.  Notably, and contrary to the Plaintiff's allegations in the original complaint, the products the Client delivered to the ordering customers were authentic Oricle Hearing Aids that were drop shipped via Lifetime Well LLC's Oricle website.  Therefore, Lifetime Well LLC also received its share of the profit for these orders.

Still, a cease and desist letter was delivered to IBSPOT.COM on July 29, 2025, demanding $250,000 in damages, which represents approximately *312 times* the profits IBSPOT.COM generated through its Oricle listings.  Although IBSPOT.COM immediately took down the listings at issue per the cease and desist request, the Plaintiff persisted with their $250,000 demand.  While the Defendant was deliberating about the demand, the Plaintiff went forward with the submission of the instant case's complaint, which was filed on September 8, 2025.  At that time, the Defendant was unaware of the filing of the complaint.  The summons and complaint were purportedly served on Defendant's registered agent on September 9, 2025, but the Defendant maintains they never received these critical notice documents.

Default judgment was entered on October 8, 2025.  The Client became aware of the default judgment around October 20, 2025, and informed A&A of the default judgment on the same date.  The Defendant, since its inception, has been a long-time client of A&A.

Anderson and Associates is a New York-based law firm.  On October 20, 2025, A&A reached out to local Pennsylvania counsel to seek support for *pro hac vice* admission, and on October 22, 2025, local Pennsylvania attorney Mr. Jeffrey Goldin formalized his engagement with the Client and A&A.  A&A entered an appearance on October 27, 2025; a Motion to Vacate was filed on behalf of the Client on October 29; and the motion was granted by this Court on October 30.  The Client and its counsel were extremely thankful and overjoyed by the judge's ruling that allowed the Client to vacate the default judgment and to address the case on its merits.

The Court then granted the Defendant leave to respond to the Complaint on or before November 4, 2025, after a "fulsome" meet and confer with Plaintiff's counsel.  After completing the meet and confer, IBSPOT.COM filed its Motion to Dismiss on November 4.  A&A took the entire drafting responsibility for the Motion to Dismiss and wrote the entire motion without seeking input from the local Pennsylvania counsel.  This was an acceptable arrangement to IBSPOT.COM because the agreed-upon arrangement between A&A and the local counsel was a divide and conquer approach.  The local Pennsylvania counsel was only responsible for filing the document that was completed entirely by A&A.

Still, the requirement by the Court for A&A to file its entire Motion to Dismiss in just three business days—one of which was Halloween and another of which was Election Day—after the default judgment was vacated presented a very challenging timeline, especially given the parental and personal duties of the undersigned counsel for IBSPOT.COM.  As the mother of young children, Halloween and weekend children's activities require significant time investments.  Despite these challenges, A&A filed the Client's Motion to Dismiss, which was partially granted.  Prior to the Court's partial granting of the Motion to Dismiss, the Plaintiff opposed the Motion to Dismiss on November 18.  That opposition flagged a quote from a case

cited in the Motion to Dismiss that did not appear to exist in the cited opinion.  This was the first time that senior counsel at A&A was alerted to a potential issue with any citation, and therefore, for the reply A&A filed on November 25, 2025, A&A took extra precautions to ensure all citations in the reply were proper.

The undersigned was very shocked by the Court's Order on November 26 that pointed out A&A's citation errors and issues.  The undersigned had spoken with a certain new Law Clerk at A&A on November 18, just a few days before the Court's Order, because A&A staff caught the Law Clerk using—undisclosed and unbeknowst to the firm—artificial intelligence to prepare filings in two separate cases.  Unfortunately, the Law Clerk had presented the work that was generated by artificial intelligence as her own, and until November 18, A&A was unaware of the Law Clerk's artificial intelligence usage.  A&A counsel did not put the pieces together that the Law Clerk had also used AI for the Motion to Dismiss in the present case filed on November 4. Unfortunately, given the tight time constraints outlined above, the undersigned counsel totally failed to discover the undisclosed AI usage in the instant case until the November 26 order. Thus, the undersigned is thankful to the Court for alerting the firm to this serious issue that honestly could have snowballed even more disastrously than it already has.

Anderson and Associates decided to terminate the new Law Clerk, whose name is being withheld from this filing for privacy reasons, on November 26.  Due to Thanksgiving holiday office closures, A&A officially terminated the Law Clerk on December 1. Before termination, A&A asked the Law Clerk for an explanation specifically regarding the citations and quotations the Court identified in the Motion to Dismiss for the instant case.  The explanation given by the Law Clerk was that the individual used Lexis+ AI and LexisNexis Protégé as the primary legal research tools for the filing.  The Law Clerk mistakenly assumed that these platforms, as some of

the most premier and frequently utilized legal research tools, would not miscite cases or mischaracterize opinions. Tragically, the Law Clerk's assumption was completely false, and her usage of these tools was done without permission and without disclosure. Although the undersigned supervising attorney had repeatedly asked the Law Clerk to confirm that all case citations mentioned in the motion were double checked for accuracy, the undersigned fully understands it was her own responsibility to ensure the ultimate accuracy of the filing. After the Court's November 26 Order, the undersigned asked the Law Clerk again about each case and its origins. At that time, A&A was provided with an excel file generated by the Law Clerk that explained each of the Motion to Dismiss's case citations in detail. Unfortunately, at least two AI detectors indicated that the case explanations A&A was given by the Law Clerk even after this Court's discovery were also 100% AI generated. Since this worker seemed entirely reliant on AI to do even the most basic legal research, A&A decided to terminate the individual's employment. Given the circumstances of the discussion (immediate termination of the employee's contract with A&A), there was no way for the firm to further confirm whether Lexis+ AI and LexisNexis Protégé were the *only* AI platforms used in the generation of the brief, or whether it was other AI platforms were also utilized.

In early December, A&A informed the Client of the Court's Order as relates to potential sanctions against the firm. Despite the AI issues, the Client was thankfully still supportive of A&A in large part due to the long term relationship, trust, and goodwill that had been generated between the company and the firm over the years. *See* Declaration of Danielle White.

Anderson and Associates is a boutique firm that currently employs six full-time staff, including two attorneys, and two part-time college interns. The attorney in the firm other than the undersigned does not routinely handle litigation—focusing primarily only on immigration.

As a relatively small firm, A&A maintains a very tight budget.  Despite the tight budget, A&A regularly contributes its limited resources to pro bono and mentorship activities.  A&A senior staff are well aware of the negative press that AI hallucinations and errors in court filings have generated for firms large and small.  While A&A had already been researching and considering the implementation of an AI policy—especially, studying the brand new AI policy released this October by New York State's judicial system, and its implications for smaller firms—A&A still thought it had more time to develop and release its official policy.  Due to the present incident, however A&A expedited the release of its new AI policy—which calls for zero-tolerance and immediate termination for any staff using AI without full disclosure to a supervising attorney—issuing it to all staff on December 5, 2025.  *See* Exhibit 1.

## **ARGUMENT**

Anderson and Associates takes full responsibility for the drafting errors in its Motion to Dismiss, profusely apologizes about the situation to all involved, and sincerely requests the Court not make an example out of the undersigned's boutique firm because pursuant to Rule 11(2)(b), the undersigned believed to the "best of [her] knowledge" and "information," which was "formed after an inquiry" that she believed was "reasonable under the circumstances," the "legal contentions" she certified were "warranted."  *See* FRCP Rule 11.  Of course, in hindsight, the undersigned deeply realizes the legal contentions in the Motion to Dismiss contained "multiple errors," and so has taken rapid steps to ensure that filing represented a one-time error that will never be repeated by anyone in the firm.  A&A seeks this Court's and the counterparty's grace to overlook this regretful error on a one-time basis and hopes that this Court will find that monetary sanctions are not warranted.

A&A also appreciates the Court's opportunity allowing the firm to explain the erroneous filing.  While A&A does not deny the Court's sanctions inquiry is warranted, the firm hopes that this Court will use its discretion to find that sanctions are not necessary, whether to make an "example" out of A&A, Order, ECF No. 27 at footnote 4, or to "deter repetition of the conduct," FRCP 11.  To be sure, an attorney has a responsibility to certify to the court the appropriateness of the legal arguments that are presented in a motion.  *See* FRCP 11.  A violation of such certification "may," at the Court's discretion, lead to sanctions in the form of a payment of "a penalty into court," "reasonable attorney's fees," or  or "nonmonetary directives."  *See* Rule 11(c)(1),(4).  However, a "represented party" will not be held monetarily responsible for an 11(b)(2) violation related to legal argument made by its counsel.  Notably, while Rule 11 sanctions imposed by a court must be limited in certain circumstances, the imposition of sanctions is not required by the federal rules.

Judge Kearney's Policies on artificial intelligence usage state are also instructive as to whether sanctions should be imposed.  The Policies read, in relevant part, as follows: "[p]arties… are reminded to double-check their reliance on artificial intelligence in a filing to ensure the arguments and citations to authority actually say what you represent to the Court." Policies, I.,H.

A&A has also identified three precedential and informative cases, all from this year, in the Eastern District that relate to sanctions for AI use.  In *Bunce v. Visual Tech. Innovations, Inc.*, 2025 U.S. Dist. LEXIS 36454, *8-9 (E.D. Pa., 2025), an Eastern District judge opined that although "technology is always evolving, and legal research tools are not exception… [b]ut if approached without prudential scrutiny, use of artificial intelligence can turn into outright negligence.  Where the danger in violating Rule 11 lies not in AI's utility but in the

overconfidence of attorneys who revere it as infallible." In *Bevins v. Colgate-Palmolive Co.*, 2025 U.S. Dist. LEXIS 68399, *14-16 (E.D. Pa., 2025), the court stated in its opinion that it remained "concerned about the questionable case[s]" cited by a party's counsel and was "unconvinced by counsel's explanations." The court noted in a footnote that the cases appeared to be AI "hallucinations," and sanctioned counsel in part because the attorney failed to disclose that fact, even after given the chance. Finally, in *Bryant v. Pottsgrove Sch. Dist.*, 2025 U.S. Dist. LEXIS 184640, *1 (E.D. Pa., 2025), a *pro se* party was called out for filing a motion to dismiss response in only two days, a remarkably quick fashion, which led to a footnote discussion by the court on artificial intelligence usage. *See Bryant v. Pottsgrove Sch. Dist.*, 2025 U.S. Dist. LEXIS 184640, *1 (E.D. Pa., 2025) ("Defendants filed their Motion to Dismiss on July 17, 2025. *[The* pro se *party] filed her response just two days later. To respond so quickly would be a remarkable feat if done by a lawyer. When done by a pro se litigant, it strains credulity.* The proliferation of artificial intelligence tools, such as OpenAI's ChatGPT product, will undoubtedly change the legal profession. The technology is poised to facilitate legal research, drafting, and compliance with the law. But a machine is no substitute for a lawyer.").

What all of these cases have in common is that the filer of the relevant documents presumably *knew* that AI was used in the document's drafting. Here, however, the Law Clerk used AI unbeknownst to the firm, instead presenting the artificial work as her own. While this is a serious management error, A&A respectfully contends that the error does not rise to the level of "negligence." It was objectively reasonable given the circumstances for the undersigned to assume that her law clerk, a 2025 J.D. graduate from a nationally-recognized program, was trained not to recklessly deploy artificial intelligence for official court filings during her time in law school. In its mentorship and employment capacities over its last decade-plus existence,

A&A has worked with numerous high school, college, law school, and recent law school graduates. To be frank, A&A has never before encountered or worked with an individual that did not inherently understand that *major aspects including citations* of a legal filing should not be crafted solely with the unverified and unreported use of AI. By asking the Law Clerk to double confirm all of the citations prior to the filing of the Motion to Dismiss, and by receiving the Law Clerk's assurances that this step had been taken, the undersigned took reasonable steps to ensure the legal accuracy of the filing pursuant to Rule 11. In conclusion, A&A respectfully requests this Court find that this circumstance, although a very unfortunate management failure, did not rise to the level of negligence.

Further, if this Court should find otherwise, that A&A's filing does rise to the level of negligence, the undersigned still sincerely beseeches the Court to exercise its discretion not to require monetary sanctions against the firm. With the release of A&A's new *zero-tolerance* AI policy, Exhibit 1, there is little-to-no likelihood that A&A will encounter this issue again. As such, A&A hopes this Court will recognize there is no need to "deter" A&A's future conduct through sanctions.

There is also no need to make an "example" of A&A, a small boutique with limited resources that regularly uses these limited resources to contribute to pro bono and mentorship activities like legal aid desks at homeless shelters, legal aid desks at minority community centers, and free legal services for non-profits and churches. Any monetary sanctions represent resources that will be taken away from the small firm's bottom line, which, with such a tight budget, will inevitably negatively impact its pro bono and mentorship programs. The shame, humiliation, and loss of resources that A&A has already experienced due to this unfortunate incident are enough to serve as an example to other solo or small firms.

Finally, Judge Kearney's Policies require attorneys to double-check their AI usage before filing a motion. Here, the undersigned attorney was misled about the usage of AI in the first place. A&A fully acknowledges the inaccuracies, miscites, and misquotes identified by the Plaintiff's counsel and by the Court in its previous Order. A&A has been following the headlines about AI and is well aware of the issues, but never thought it would hit so close to home. Regardless, there is no excuse, and the undersigned takes full responsibility. The undersigned can only pray for the court's mercy. If anyone *is* sanctioned, it should only be A&A. IBSPOT.COM should not be sanctioned pursuant to FRCP 11(c)(5)(A). And the local counsel had no involvement here.

### CONCLUSION

While A&A beseeches the Court not to sanction the firm in any way, should the Court decide it is necessary to do so, A&A requests the Court impose a nonmonetary sanction requiring the undersigned to attend CLE courses related to the management of small firms; the supervision of staff using AI; or AI policy for small or solo firms. Regardless of the other sanctions decided, A&A specifically requests this Court to respect the Client's desire to retain A&A as *pro hac vice* counsel for this case despite the issues addressed by this memorandum.

Dated: December 5, 2025

<div style="margin-left: 40%">

Respectfully submitted,
By:_____/s/ Yen-Yi Anderson_____
Yen-Yi Anderson
New York Bar No. 5096268
*Pro Hac Vice* Admission to
  Pennsylvania Eastern District
Anderson and Associates
347 W 36th Street, Suite 1003
New York, NY 10018
Tel: (646) 201-9117
Email: y.anderson@aalawpc.com
Counsel for Plaintiff
IBSPOT.COM

</div>