IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LIFETIME WELL LLC | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 25-5135 |
| | : | |
| IBSPOT.COM INC. | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                    **January 26, 2026**

Out-of-state website retailers sued in this federal court for trademark and intellectual property concerns may not have relationships with lawyers admitted to practice before us. The retailer company (who cannot defend itself in court without counsel) may ask their known counsel to find lawyers admitted to the Bar of our Court to act as co-counsel to defend claims against it. The members of the Bar of our Court then swear they will ensure the out-of-town counsel will fully comply with the Rules of Civil Procedure, our Local Rules, and the Judge's Policies. We may then grant our Bar member's motion allowing the out-of-town lawyer the privilege of specially appearing in our Court to assist the local counsel barred in this Court.

We today test the role of both sets of lawyers in the misuse of artificial intelligence in briefing. A member of the Bar of our Court moved to dismiss a trademark claim against a website retailer as co-counsel for a specially admitted New York lawyer. Our Bar member admittedly did not read or study the case law. He simply signed his name. The paper he signed along with the New York attorney contained at least eight false case citation hallucinations generated by artificial intelligence. Our talented lawyers in Chambers caught these hallucinations and we directed counsel to show cause as to why we should not impose sanctions. New York co-counsel responded by firing a new lawyer in her office who played some role in preparing the briefing who used

artificial intelligence in this case and at least two others. The New York senior lawyer did not explain why she did not catch or perform the basic due diligence in reading the cases in a Memorandum prepared by an attorney under her supervision. She also did not explain why she did not use this mistake as a lesson rather than a reason to fire the new lawyer. She also placed her local co-counsel at risk of sanction without cite checking or reading the cases in the Memorandum. She asked him to sign and file. Both attorneys admit this regrettable lapse in diligence. They both issued updated policies governing their use of artificial intelligence. We find both attorneys violated the obligations owed to the Court and their colleagues forced to track down authorities. They presented false case citations and admittedly did so without checking the artificial intelligence.

Sanctions are warranted. Today's tailored sanction serves more as a lesson to other lawyers who may resort to the easy way hoping to meet economic and time goals. We impose a monetary sanction upon the drafting New York co-counsel payable to a New York organization focusing on attorneys practicing in her intellectual property discipline. We do not impose monetary sanctions upon local co-counsel. We also do not refer either lawyer to their respective disciplinary authorities subject to their compliance with today's Order. But, to meet our hope of deterring more of these sanctionable lapses, we direct each co-counsel send cover letters to identified local organizations tailored to this dispute attaching today's Order, this Memorandum, and their updated artificial intelligence policies along with our request these organizations distribute to their members. We also direct New York co-counsel copy her cover letter with attachments to the judges and counsel in the two other known cases where the New York lawyer used artificial intelligence.

I.    **Facts**

Lifetime Well LLC sent New York entity IBSpot.com a cease-and-desist letter on July 29, 2025 for allegedly violating copyright and trademark law by selling Lifetime Well's hearing aid on IBSpot.com's website.[1] Lifetime Well then sued and served the Summons and Complaint on IBSpot.com's registered agent on September 9, 2025.[2] IBSpot.com did not respond. Lifetime Well moved for default judgment on October 3, 2025 and our Clerk of Court entered default judgment against IBSpot.com on October 8, 2025.[3]

### *Attorney Goldin moves for special admission of Attorney Anderson and they move to vacate the default judgment.*

IBSpot.com eventually retained counsel following the entry of default. Attorney Jeffrey J. Goldin, a member of this Court's Bar, entered his appearance on behalf of IBSpot.com on October 24, 2025.[4] Attorney Goldin moved for admission *pro hac vice* of New York attorney Yen-Yi Anderson of Anderson and Associates on October 27, 2025 swearing to us he would remain responsible as local counsel for Attorney Anderson's conduct and filings, including continuing to sign filings mindful of his Rule 11 and ethical obligations.[5] We granted Attorney Goldin's motion allowing Attorney Anderson to also appear on behalf of IBSpot.com.[6]

IBSpot.com moved to vacate the entry of default judgment on October 29, 2025.[7] Both Attorney Anderson and Attorney Goldin signed the memorandum in support of the Motion to vacate.[8] They represented IBSpot.com "noticed the Summons and Complaint via its online portal" about six weeks earlier on September 16, 2025 and "immediately began efforts to retain counsel admitted" to this Court.[9] IBSpot.com contacted Anderson and Associates almost a month later on October 15, 2025 after they could not locate local counsel.[10] Anderson and Associates then engaged Attorney Goldin on October 21, 2025.[11] Attorney Goldin filed using his electronic case filing credentials.[12] We granted IBSpot.com's Motion to vacate on October 30, 2025 and granted it leave to respond to the Complaint on or before November 4, 2025.[13]

3

### *Attorneys Anderson and Goldin file memoranda with several false citations.*

IBSpot.com timely moved to dismiss on November 4, 2025.[14] Attorney Anderson and Attorney Goldin signed the Motion to dismiss.[15] Attorney Goldin again filed using his electronic case filing credentials.[16]

We reviewed IBSpot.com's Motion to dismiss. We identified eight instances in which Attorneys Anderson and Goldin offered authorities which did not stand for the propositions asserted, arose from inapposite jurisdictions, or included inaccurate quotations.[17] We began drafting an Order to show cause as to why we should not impose sanctions but waited to see if Lifetime Well's counsel would also use false citations. Lifetime Well opposed the Motion to dismiss on November 18, 2025.[18] It did not use false citations but flagged one quotation presented by IBSpot.com which did not exist in the cited opinion.[19]

We granted IBSpot.com leave to confirm the sources of its citation errors or show cause as to why we should not impose sanctions for filing a Motion with readily apparent false citations or quotations.[20] Attorney Anderson responded to the show cause order on December 5, 2025 and Attorney Goldin responded on December 9, 2025.[21] Plaintiff's counsel also responded detailing its fees in addressing the Motion.[22]

### *Attorney Anderson admits her wrongful reliance and fires her firm's junior attorney.*

Attorney Anderson swore IBSpot.com, a "long-time client" of Anderson and Associates, became aware of the default judgment on October 20, 2025 and informed Ms. Anderson of the default judgment the same day.[23] Anderson and Associates then "took the entire drafting responsibility for the Motion to Dismiss and wrote the entire motion without seeking input from" Pennsylvania Attorney Goldin.[24] But "the requirement by the Court for [Anderson and Associates] to file its entire Motion to Dismiss in just three business days—one of which was Halloween and

another of which was Election Day—after the default judgment was vacated presented a very challenging timeline, especially given [Attorney Anderson's] parental and personal duties."[25] Attorney Anderson swore she assigned a new law clerk to assist her in preparing the Motion to dismiss and asked the law clerk to "double confirm all of the citations prior to the filing of the Motion."[26]

Attorney Anderson swore the single false citation flagged by Lifetime Well in its Opposition "was the first time that senior counsel at [Anderson and Associates] was alerted to a potential issue with any citation" in the Motion to dismiss.[27] On the same day, Attorney Anderson met with a "certain new Law Clerk" after Anderson and Associates staff "caught the Law Clerk using—undisclosed and unbeknownst to the firm—artificial intelligence to prepare filings in two separate cases."[28] Yet Attorney Anderson and her firm "did not put the pieces together that the Law Clerk had also used [artificial intelligence] for the Motion to Dismiss in the present case" until our Order to show cause "given the tight time constraints."[29]

Attorney Anderson swore she "asked the Law Clerk again about each case [in the Motion] and its origins" <u>after</u> our Order to show cause.[30] The law clerk "used Lexis+ AI and LexisNexis Protégé as the primary legal research tools for the filing" and provided an Excel file explaining each citation.[31] "At least two [artificial intelligence] detectors indicated that the case explanations [Anderson and Associates] was given by the Law Clerk . . . were also 100% [artificial intelligence] generated."[32]

Attorney Anderson responded by, among other things, firing the new law clerk (a law school graduate hired by her firm) because the law clerk "seemed entirely reliant on AI to do even the most basic legal research" and implementing a zero-tolerance, immediate termination artificial

intelligence policy.[33] Anderson and Associates now "comes before this Court with its tail between its legs, fully acknowledging the errors."[34]

Attorney Goldin conceded the false citations "involved the use of generative artificial intelligence ("GAI") tools, originated with [IBSpot.com]'s specially admitted counsel in New York and were not picked up by Attorney Goldin prior to filing" and "accepts responsibility for his signature on the filing."[35] Attorney Goldin responded by "voluntarily complet[ing] a continuing legal education course of the ethical and responsible use of [generative artificial intelligence]," "spen[ding] many hours reading over virtually every recent opinion in the Third Circuit and in other jurisdictions on the dangers of [generative artificial intelligence] and the obligations of local counsel," and an agreement with Anderson and Associates "all future filings will be submitted to Attorney Goldin at least 48 hours ahead of the filing deadline with a table of authorities and all supporting decisions, statutes and secondary authority, to which Attorney Goldin will facilitate a more thorough pre-filing review and will certify the same with the filing."[36] Attorney Goldin "apologizes to the Court and all counsel for the error through this public filing [of his Response]."[37]

## II.    Analysis

We address whether IBSpot.com's two lawyers violated Federal Rule of Civil Procedure 11 and, if so, what sanctions are warranted following our identification of multiple false citations in its Motion to dismiss. We issued an Order to show cause requiring counsel to explain why their conduct did not violate Rule 11. We find each co-counsel violated Rule 11. Specially admitted lead co-counsel flagrantly ignored her obligations. She made the error. And then fired a new lawyer rather than train this new lawyer. We find monetary and reporting sanctions are warranted against Attorney Anderson as opposed to her law firm. Local co-counsel Attorney Goldin erred in ignoring his local counsel obligations. We rely upon local counsel to ensure the integrity of the filings made

by attorneys specially admitted to practice in this Court based upon our trust in members of this Bar's credibility. Attorney Goldin did not meet this standard. But he responded appropriately in response to our concern. We find no basis for a monetary sanction against him. Nor do we presently find a basis to refer either attorney to the state bar disciplinary authorities.

The Supreme Court through Federal Rule of Civil Procedure 11(b) provides an attorney "presenting to the court a pleading, written motion, or other paper . . . certifies to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" the "claims, defenses, and other legal contentions are warranted by existing law" and the "factual contentions have evidentiary support. . . ."[38] "To satisfy the affirmative duty imposed by Rule 11, an attorney must inquire into both the facts and the law before filing papers with the court."[39] "[O]bligations imposed under subdivision (b) obviously require that a pleading, written motion, or other paper, be read before it is filed or submitted to the court."[40] The Court of Appeals for the Second Circuit has observed "[a]t the very least, the duties imposed by Rule 11 require that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely. Indeed, we can think of no other way to ensure that the arguments made based on those authorities are warranted by existing law, or otherwise legally tenable."[41]

"The legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances . . . ."[42] The attorney must demonstrate an "objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact."[43] Our Court of Appeals explains finding cause for sanctions under Rule 11 "requires only negligence, not bad faith" and is "an important tool to deter litigation misconduct."[44] "Lawyers cannot avoid sanctions by unreasonably failing to investigate whether their factual [or legal] contentions have support. Nor can lawyers avoid sanctions by directing a

subordinate to file a pleading that will violate Rule 11(b)."[45] We may "sanction lawyers for what they should have known, not just what they knew."[46]

We may *sua sponte* "order an attorney . . . to show cause why conduct specifically described in the order has not violated Rule 11(b)" and must issue an order before imposing monetary sanctions.[47] The purpose of sanctions is to "deter repetition of the conduct or comparable conduct by others similarly situated" rather than penalize an attorney.[48] "A sanction may include 'non[-]monetary directives' or 'an order to pay a penalty into court,' among other things."[49] Rule 11's amendments "provides more specific examples of a court's sanctioning powers, 'such as striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; referring the matter to disciplinary authorities.'"[50]

"Rule 11 does not prohibit the use of generative [artificial intelligence], however, it does require parties to verify that they are not submitting briefs to the Court which rely on fictitious cases."[51] It "make[s] clear that the signing attorney is the final auditor for all legal and factual claims contained in their motions."[52] Such a duty does not change when associates, law clerks, or other firm personnel assist with research or drafting. The responsibility rests with the attorney who elects to place a filing before us. The certification attaches at filing and applies regardless of workflow, staffing model, or internal delegation.

Rule 11 reflects a foundational principle of federal practice. Courts rely on counsel's representations. The integrity of the adversarial process depends on attorneys confirming the accuracy of what they submit before invoking judicial resources.

We are guided by reasoning from our colleagues across the country addressing misuse of generative artificial intelligence without oversight. These violations persist despite repeated

judicial warnings and extensive public discussion of the risks associated with unverified artificial intelligence-assisted legal research.[53] Courts accordingly continue to find it appropriate to impose sanctions on attorneys who violated Rule 11 by submitting filings relying on unsupported or fictitious legal authority. Monetary sanctions ranging from $1,000 to $10,000 are routinely imposed in response to such conduct.[54] Other colleagues impose additional remedial measures such as revocation of pro hac vice admission, removal as counsel of record, striking pleadings, and referral to state disciplinary authorities.[55] And many others impose a combination of monetary penalties and non-monetary directives where the circumstances warrant.

We offer some published exemplars. Judge Scott issued a $2,500 sanction and ordered mandatory Continuing Legal Education where an attorney used ChatGPT to cite artificial cases in two separate motions.[56] Judge Crone imposed a $2,000 sanction and ordered Continuing Legal Education for submitting a brief "without reading the cases cited, or even confirming the existence or validity of the cases included therein" and after opposing counsel "specifically identified the nonexistent legal authorities," the attorney "took no action to verify his research." [57] Magistrate Judge Wormuth issued a $3,000 sanction and required the attorney self-report to the state bar disciplinary boards where the "citation errors [were] caused by contributions from [the attorney's] paralegal or another individual who assisted in drafting the documents" and the attorney admitted "that she did not verify the citations and takes full responsibility for the errors."[58] Judge Navarro struck the offending motion, awarded attorneys' fees and costs, and ordered reporting to the state bar association where "the nonexistent authorities were found and cited by [a] paralegal" and the attorney "failed to 'verify each authority,' the bare minimum which Rule 11 requires."[59] Judge Martinez issued a $1,500 sanction, ordered mandatory Continuing Legal Education, and required reporting to multiple state disciplinary boards where the attorney "outsourced his duties to another

attorney and failed to adequately review that attorney's work-product and ensure its accuracy before putting his own name on it and filing it."[60] Judge Slaughter imposed a $3,000 sanction against the drafting attorney and a $10,000 sanction against signing co-counsel where the drafting attorney failed to disclose her use of ChatGPT and the signing firm failed to "follow its standard practice of proofing and checking sections or contributions by other firms" because it relied on "the close relationship, long history, and [the drafting attorney's] role on the project."[61] Judge Rankin revoked the drafting attorney's pro hac vice admission, removed him as counsel of record, imposed a $3,000 sanction, and imposed $1,000 sanctions against the two supervising, non-drafting attorneys where the supervising attorney did not review the motions prior to signing and instead "relied on [the drafting attorney's] reputation and experience to comply with [their] Rule 11 obligations."[62]

### A.    Attorneys Anderson and Goldin violated Rule 11.

Attorney Anderson argues Anderson and Associates's conduct does not "rise to the level of negligence" under Rule 11.[63] She admits the Motion to dismiss "contained 'multiple errors'" and a law clerk who assisted with preparing the Motion used artificial intelligence.[64] But Attorney Anderson attempts to distinguish this case on the ground the law clerk used artificial intelligence "unbeknownst to the firm."[65] She contends "[i]t was objectively reasonable given the circumstances . . . to assume that her law clerk, a 2025 J.D. graduate from a nationally-recognized program, was trained not to recklessly deploy artificial intelligence for official court filings during her time in law school."[66] She further asserts "[b]y asking the Law Clerk to double confirm all of the citations prior to the filing of the Motion to Dismiss, and by receiving the Law Clerk's assurances that this step had been taken, [she] took reasonable steps to ensure the legal accuracy of the filing pursuant to Rule 11."[67]

We disagree. "A fake opinion is not 'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law."[68] "Quite obviously, many harms flow from [the use of false citations]— including wasting the opposing party's time and money, the Court's time and resources, and reputational harms to the legal system (to name a few)."[69] "Signing a legal document ensures that the attorney read the document and conducted a reasonable inquiry into the existing law."[70] This obligation is a "nondelegable responsibility . . . [and] blind reliance on another attorney can be an improper delegation of this duty and a violation of Rule 11."[71] "[T]he signing attorney cannot leave it to some trusted subordinate . . . to satisfy himself that the filed paper is factually and legally responsible."[72] "[B]y signing he represents not merely the fact that it is so, but also the fact that he personally has applied his own judgment."[73] "The key takeaway for attorneys is simple: make a reasonable inquiry into the law before signing (or giving another permission to sign) a document, as required by Rule 11. If an attorney does not do so, then they should not sign the document."[74] But "if the attorney decides to risk not making reasonable inquiry into the existing law and signs, then they may be subject to sanctions."[75]

Attorney Anderson submitted a brief containing citations to fake opinions—authorities which did not stand for the propositions asserted, arose from inapposite jurisdictions, or included inaccurate quotations. She signed the Motion and certified compliance with Rule 11. She did not personally double check the Motion to validate all case citations or to ensure the ultimate accuracy of the filling.[76] Attorney Anderson's defense her firm's new lawyer used artificial intelligence "unbeknownst" to her firm "rings completely hollow, because [Attorney Anderson] had a duty to know by reviewing the document before signing her name to it. Her decision to knowingly sign a brief that she had not meaningfully reviewed was hers and hers alone."[77]

Opposing counsel then identified a false quotation in the Motion in its Opposition and on the same day Anderson and Associates staff discovered the law clerk who performed the legal research for the Motion had used artificial intelligence without disclosure in two unrelated cases. Attorney Anderson and her firm did not review the Motion for additional citation errors. They did not question the law clerk about the research underlying the Motion. Attorney Anderson instead filed a reply brief one week later and waited until we identified multiple false citations the next day. Attorney Anderson had the opportunity to review the filing, identify erroneous citations, and notify us. The burden should not have fallen on us to expend judicial resources identifying blatantly false cites.

Only after we issued our Order to show cause did Attorney Anderson follow up with the new lawyer about the citations in the Motion. The law clerk provided a spreadsheet explaining the cited authorities. Attorney Anderson reports "at least two [artificial intelligence] detectors indicated that the case explanations . . . given by the Law Clerk . . . were also 100% [artificial intelligence] generated."[78] Attorney Anderson's response identifies no point at which she examined the cited authorities, confirmed their existence, or assessed whether they supported the propositions asserted in the Motion. Even after we raised concerns, Attorney Anderson's response describes the use of automated tools to evaluate the law clerk's work rather than independent review of the case law.

Attorney Anderson also attributes the filing errors to time pressure. Her framing of "the requirement by the Court for [Anderson and Associates] to file its entire Motion to Dismiss in just three business days" omits material context. The dispute between Lifetime Well and IBSpot.com began in July 2025 with a cease-and-desist letter.[79] Lifetime Well served IBSpot.com on September 9, 2025. IBSpot.com represented in its Motion to vacate it noticed the action through

its online portal on September 16, 2025 and contacted Anderson and Associates on October 15, 2025. Attorney Anderson later swore IBSpot.com became aware of the default judgment on October 20, 2025 and then contacted her firm. IBSpot.com and its counsel had notice of the claims and underlying issues well before we vacated the default judgment. The Motion to dismiss deadline did not require counsel to learn the case anew after October 30, 2025.

Attorney Goldin similarly admits the Motion to dismiss "included citations to some cases that were real but did not stand for the proposition asserted and contained non-existent quotes" and the "mistakes involved the use of generative artificial intelligence."[80] He "accepts responsibility for his signature on the filing and recognizes the Court's justifiable concern."[81] Attorney Goldin does not appear to dispute his conduct violated Rule 11.[82]

Both Attorney Anderson and Attorney Goldin violated Rule 11 by signing and filing briefing containing false citations without confirming the accuracy of the legal authority presented.

### B.  We impose limited monetary and non-monetary sanctions upon Attorney Anderson.

We next address an appropriate sanction for Attorney Anderson. Attorney Anderson urges us to decline sanctions or limit relief to non-monetary measures.[83] She cites the absence of earlier discipline, the size of her firm, termination of the law clerk, and adoption of an internal artificial intelligence policy.[84] We considered these arguments.

We find both monetary and non-monetary sanctions appropriate to remedy the harm created by Attorney Anderson's approach to briefing as an attorney specially admitted in this Court and serve "Rule 11's central goal—deterrence."[85] Her conduct extends beyond what a purely non-monetary sanction would adequately address. Attorney Anderson sought to remedy the situation not through immediate self-correction (as compared to Attorney Goldin) but by first terminating a new lawyer for using artificial intelligence and then implementing procedures only after the errors

came to light. She did not correct the briefing after opposing counsel identified a false citation and her firm learned the law clerk had misused artificial intelligence in other cases. She instead waited for us to identify the full scope of her misrepresentations. We are also concerned by her shifting explanations and her reliance on local counsel who trusted her submissions without independent review. She now admits her cavalier approach to briefing in this Court.

We do not find a substantial sanction warranted given the sanction upon Attorney Anderson rather than her law firm and the relatively limited financial harm caused. But some monetary sanction is required as it appears termination of a subordinate served as Attorney Anderson's initial response rather than reflection on her own supervisory and filing obligations. A modest monetary sanction is necessary to reinforce accountability and deter repetition of her conduct and similar conduct by others.[86] We find her errors—while serious—can serve as a lesson to other attorneys and particularly those engaged in intellectual property practice.

We impose a $4,000 monetary sanction, payable to the City Bar Justice Center's Neighborhood Entrepreneur Law Project from Attorney Anderson's personal funds and not as a firm expense. Her conduct reflects a lack of supervision, insufficient planning, and inadequate management of professional obligations. This monetary sanction reinforces the obligation of attorneys to prevent unverified use of artificial intelligence, ensure appropriate training on its use, and maintain meaningful supervision and oversight of all research and court filings, consistent with the purposes of Rule 11. Attorney Anderson shall send a cover letter to the Director of the Neighborhood Entrepreneur Law Project, enclosing today's Order and this Memorandum, along with her law firm's new artificial intelligence policy, together with the monetary payment, and requesting today's Order,  this Memorandum, and her new artificial intelligence policy be shared with attorneys and paraprofessionals in its membership.

We also require Attorney Anderson to provide (and show in the letter) a copy of this cover letter (with attachments) to all counsel and the presiding judges in the two other matters where her newer lawyer used undisclosed artificial intelligence. We do not find referring her to a disciplinary board to be an appropriate sanction today. We do not seek to impugn Attorney Anderson's integrity. She made an error and compounded it. But she has taken steps to address future concerns in her firm.  The decision to terminate a new lawyer rather than correct the filing reflects a misallocation of responsibility. This misstep serves as a lesson for attorneys practicing in this Court and elsewhere the federal courts through Rule 11 require active supervision, independent verification, and accountability. The combined monetary and non-monetary sanctions imposed upon Attorney Anderson are intended to educate, deter repetition, and conserve judicial resources.

### C.    We impose non-monetary sanctions upon Attorney Goldin.

Attorney Goldin asks us to impose no sanction "in in light of the motion's non-frivolous substance and partial success, the prompt acknowledgment and remediation of the errors, the reasonableness of his reliance on specially admitted counsel, and the meaningful concrete steps he has now implemented to ensure this conduct is not repeated."[87] We also considered these arguments.

We first address Attorney Goldin's emphasis on the Motion's asserted non-frivolous substance and partial success.[88] This framing misses the point. The presence of some meritorious arguments does not excuse the inclusion of others supported by inaccurate, misleading, or fictitious citations. The Supreme Court through Rule 11 asks whether an attorney conducted a reasonable inquiry before signing and filing each legal contention presented to us. Nor does partial success relieve this Chambers of the burden of independently verifying and scrutinizing legal authority certified as accurate by Attorneys Anderson and Goldin. We were required to identify and

disregard numerous fabricated citations before reaching the merits of any argument. Rule 11 exists to ensure courts may rely on the accuracy of the legal authority presented to them, not to excuse errors because some arguments ultimately succeed. We cannot excuse false citations because we partially granted the requested relief; we do not allow false submissions when the arguments do not prevail but excuse them if the arguments prevail.

Attorney Goldin erred in material respects. But the most glaring is based on his near-blind acceptance of papers drafted by an attorney not admitted to the Bar of this Court and his filing of those papers under his own name without checking the cited legal authority. Local counsel is not a rubber stamp. Attorney Goldin accepted another attorney's work product without performing basic due diligence and then signed his name to this work product.

At the same time Attorney Goldin has stepped forward. He accepted responsibility and completed continuing legal education. We find no basis he will continue to engage in local counsel practice at this apparently one-time level of disregard. But Rule 11 sanctions serve not only to address past conduct. They exist to deter repetition of similar conduct by others. Attorney Goldin's conduct and today's sanction upon him serve as an important lesson for lawyers serving as local counsel.

We find a non-monetary sanction is most appropriate as an instructional measure. Attorney Goldin shall send a cover letter to the President of the Philadelphia Intellectual Property Lawyers Association enclosing today's Order, this Memorandum, and his artificial intelligence policy and respectfully advise the President of our request these attachments be shared with the Association's membership during its next Association membership meeting as a lesson on the risks of artificial intelligence and the duties of local counsel as members of the Bar of this Court.

We do not refer Attorney Goldin to our disciplinary panel on this occasion. We trust his corrective steps and continuing education will prevent recurrence. But a non-monetary sanction remains appropriate where the conduct may serve as a direct lesson to others.

## III.    Conclusion

Judges and commentators continue to warn lawyers about the risks of artificial intelligence shortcuts. We today address a more fundamental concern: lack of diligence and supervision of less experienced lawyers who can fairly expect supervision. The lawyers disregarded basic fundamental understandings learned in law school about the need to ensure the case citations presented to judges support what lawyers say they do. Counsel fell far short of this fundamental obligation warranting monetary sanctions against the New York co-counsel and non-monetary sanctions against both the New York co-counsel and her local Philadelphia co-counsel.

Attorneys are again forewarned. Judges and their talented lawyers in Chambers scrutinize memoranda. Submissions containing unverified authority divert limited resources from other litigants who rely on their advocates' careful research, accurate citation, and disciplined advocacy. These sanctions serve as a reminder the attorney's oath of admission demands no less.

---

[1] ECF 31 at 2.

[2] ECFs 1, 7.

[3] ECFs 8, 10.

[4] ECF 13.

[5] ECF 14 at 3.

[6] ECF 15.

[7] ECF 16.

[8] ECF 16-1 at 6–7.

[9] *Id.* at 3.

[10] *Id.* at 4.

[11] *Id.*

[12] ECF 16 at 3.

[13] ECF 21.

[14] ECF 22.

[15] ECF 22-1 at 10.

[16] ECF 35 at 3.

[17] ECF 27 at 3 n.4. The eight defective citations identified reflect only those apparent from the record and do not foreclose the existence of additional errors.

[18] ECF 23.

[19] *Id.* at 9–10 ("Defendant relies on quotes from *Morgan's Home Equipment Corp. v. Martucci*, 390 Pa. 618 (1957), but the alleged quotes do not appear anywhere within the decision.").

[20] ECF 27.

[21] ECFs 31, 35.

[22] ECF 33.

[23] ECF 31 at 2. We note these dates also differ from the timeline sworn to in IBSpot.com's earlier Motion to vacate. *See* ECF 16-1 at 3–4.

[24] *Id.* at 3. We question Attorney Goldin's role given his obligation to sign filings under Rule 11.

[25] *Id.*

[26] *Id.* at 9.

[27] *Id.* at 4.

[28] *Id.*

[29] *Id.*

[30] *Id.* at 5.

[31] *Id.* at 4–5.

[32] *Id.* at 5.

---

[33] *Id.* at 5–6.

[34] *Id.* at 1.

[35] ECF 35 at 1.

[36] *Id.* at 2.

[37] *Id.*

[38] Fed. R. Civ P. 11(b)(2), (3).

[39] *Napier v. Thirty or More Unidentified Fed. Agents, Emps. or Officers*, 855 F.2d 1080, 1091 (3d Cir. 1988).

[40] Fed. R. Civ. P. 11 advisory committee note to 1993 amendment.

[41] *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) (citation omitted).

[42] *Ford Motor Co. v. Summit Motor Prods., Inc.,* 930 F.2d 277, 289 (3d Cir. 1991); *see also Bunce v. Visual Tech. Innovations, Inc.*, No. 23-1740, 2025 WL 662398, at *2 (E.D. Pa. Feb. 27, 2025) ("When assessing whether an attorney violated Rule 11, a court uses a 'reasonableness under the circumstances' standard.").

[43] *Ford Motor Co.,* 930 F.2d at 289.

[44] *Wharton v. Superintendent Graterford SCI*, 95 F.4th 140, 147 (3d Cir. 2024).

[45] *Id.* at 148.

[46] *Id.*

[47] Fed. R. Civ. P. 11(c)(3), (5)(B).

[48] Fed. R. Civ. P. 11(c)(4).

[49] *Bunce*, 2025 WL 662398, at *3 (quoting Fed. R. Civ. P. 11(c)(4)).

[50] *Id.* (quoting Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment).

[51] *Allbaugh v. Univ. of Scranton*, No. 24-2237, 2025 WL 2484188, at *5 (M.D. Pa. Aug. 28, 2025).

[52] *Bunce*, 2025 WL 662398, at *4.

[53]  We recognize artificial intelligence can greatly assist persons seeking access to the courts. Especially for persons unable to afford counsel. *See. e.g.,* Amal Clooney & Philippa Webb*, Why aren't we using AI to advance justice?*, Time, Jan. 26, 2026, at 64. We do not condemn these programs or the use of technological advances to assist attorneys.  The problems today instead arise from a lack of diligence and supervision.

[54] *N.Z. v. Fenix Int'l Ltd.,* No. 24-01655, 2025 WL 3626155, at *5 (C.D. Cal. Dec. 12, 2025) ($10,000 sanction); *Mid Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac LLC*, No. 24-326, 2025 WL 1511211, at *1–2 (S.D. Ind. May 28, 2025) (initial monetary sanction of $15,000 reduced to $6,000); *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 464-66 (S.D.N.Y. 2023) ($5,000 sanction) *OTG New York, Inc. v. Ottogi Am., Inc.*, No. 24-7209, 2025 WL 2671460 (D.N.J. Sept. 18, 2025) ($3,000 sanction); *Allbaugh v. Univ. of Scranton*, No. 24-2237, 2025 WL 2484188, at *7 (M.D. Pa. Aug. 28, 2025) ($1,000 sanction); *Ramirez v. Humala*, No. 24-242, 2025 WL 1384161, at *3 (E.D.N.Y. May 13, 2025) ($1,000 sanction); *Benjamin v. Costco Wholesale Corp.*, 779 F. Supp. 3d 341, 351 (E.D.N.Y. 2025) ($1,000 sanction).

[55] *See, e.g.*, *Bevins v. Colgate-Palmolive Co.*, No. 25-576, 2025 WL 1085695, at *7 (E.D. Pa. Apr. 10, 2025) (striking the offending attorney's appearance in the case with prejudice, requiring the attorney to inform the client of the sanctions, and informing the client that the client must hire new counsel if they wish to refile the case); *Johnson v. Dunn*, 792 F. Supp. 3d 1241, 1266 (N.D. Ala. 2025) (finding "(1) a public reprimand paired with a limited publication requirement, (2) disqualification, and (3) referral to applicable licensing authorities are necessary to rectify the misconduct here and vindicate judicial authority").

[56] *Bunce*, 2025 WL 662398, at *4.

[57] *Gauthier v. Goodyear Tire & Rubber Co.*, No. 23-281, 2024 WL 4882651 at *3 (E.D. Tex. Nov. 25, 2024).

[58] *Lipe v. Albuquerque Pub. Schs.*, No. 23-899, 2025 WL 2695244, at *3, *5 (D.N.M. Sept. 22, 2025).

[59] *M.T. Real Est. Inv. Inc. v. Servis One, Inc.*, No. 25-01372, 2025 WL 3771490, at *3–5 (D. Nev. Dec. 30, 2025) (citing *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir. 1987)).

[60] *Dehghani v. Castro*, 782 F. Supp. 3d 1051, 1055, 1058, 1062 (D.N.M. 2025).

[61] *Fenix Int'l Ltd.*, 2025 WL 3626155, at *2, *5.

[62] *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 495, 499 (D. Wyo. 2025).

[63] ECF 31 at 8.

[64] *Id.* at 4, 6.

[65] *Id.* at 8.

[66] *Id.*

[67] *Id.* at 9.

[68] *Mata*, 678 F. Supp. at 461.

[69] *Morgan v. Cmty. Against Violence*, No. 23-353, 2023 WL 6976510, at *8 (D.N.M. Oct. 23, 2023).

[70] *Wadsworth,* 348 F.R.D. at 495 (citations omitted).

[71] *Id.* at 495–96 (citations and quotations omitted).

[72] *M.T. Real Est. Inv. Inc.*, 2025 WL 3771490, at *3 (quoting *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 125 (1989)).

[73] *Fenix Int'l Ltd.*, 2025 WL 3626155, at *3 (quoting *Pavelic & LeFlore*, 493 U.S. at 125).

[74] *Wadsworth,* 348 F.R.D. at 496.

[75] *Id.*

[76] ECF 31 at 5.

[77] *Mavy v. Comm'r of Soc. Sec. Admin.*, No. 25-689, 2025 WL 2355222, at *9 (D. Ariz. Aug. 14, 2025 *vacated in part on reconsideration on grounds not relevant here*, 2026 WL 91483 (D. Ariz. Jan. 13, 2026).

[78] ECF 31 at 5.

[79] *Id.* at 2.

[80] ECF 35 at 1.

[81] *Id.*

[82] *See generally id.*

[83] ECF 31 at 9.

[84] *Id.* at 9–10.

[85] *Wharton,* 95 F.4th at 151 (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 404 (1990)).

[86] *See* Fed. R. Civ. P. 11(c)(4) ("A sanction [is to] be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.")

[87] ECF 35 at 1–2.

[88] *Id.* at 4–5.